# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                        Case No. 10-CR-262

AGUSTIN RODRIGUEZ-SANCHEZ

    Defendant.

## RECOMMENDATION TO UNITED STATES CHIEF DISTRICT JUDGE CHARLES N. CLEVERT

On December 7, 2010, a federal grand jury sitting in this district returned a two-count indictment against the defendant, Agustin Rodriguez-Sanchez. Count One charges him with possession of a firearm as an illegal alien in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). In Count Two, the defendant is charged with possessing a firearm that was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) and 5871. The defendant entered a plea of not guilty to the charges.

Pursuant to the pretrial scheduling order, the defendant has filed a motion to suppress his statement and for an order suppressing evidence obtained pursuant to an illegal search. (Docket #8). On February 11 and 18, 2011, the court conducted an evidentiary hearing on the defendant's motion. Detective Paul Formolo and Officers Matthew Bell and Kevin Bolyard of the Milwaukee Police Department (MPD) testified at the February 11, 2011, hearing. MPD Detective Thomas Obregon testified at the February 18, 2011, hearing.

At the conclusion of the February 18, 2011 hearing, the court reviewed the evidence presented at both hearings and concluded that the defendant was not under the influence of drugs or alcohol at the time he made the statement to law enforcement officers. The court

concluded that the defendant's statement was made knowingly and voluntarily and, therefore, stated hat the defendant's motion to suppress his statement was denied. The court mis-spoke and should have stated that, based on the evidence and for the reasons stated on the record, the court was recommending to the United States district judge that the defendant's motion to suppress his statement be denied.

The parties were given an opportunity to brief the remaining issue, namely whether there was a search of the defendant's residence before the search warrant was obtained. This portion of the defendant's motion will be addressed herein. Based on the testimony presented at the hearings and the arguments of the parties, the court now makes the following findings of fact.

## **MOTION TO SUPPRESS EVIDENCE**

### **Findings of Fact**

On November 14, 2010, at approximately 11:15 p.m., Officers Matthew Bell and Kevin Bolyard, along with other officers, went to the defendant's home, a duplex located at 1015 S. 18th Street in Milwaukee, Wisconsin, to make contact with him because the officers had received information that the defendant was in possession of a short-barreled shotgun and narcotics. When the officers arrived at the residence, Officer Bell knocked on the front door. No one came to the door so the officers decided that they would apply for a search warrant. Some officers, including Officer Bolyard, remain at the residence. Officer Bell left the area and went back to the District 2 Police Station to await the issuance of the search warrant. He returned to the residence after the search warrant had been obtained.

Officer Bell participated in the execution of the warrant and interviewed the defendant. Since he was gone from the residence for three hours, Officer Bell had no first hand knowledge that no search was conducted during the three hours before the warrant was

obtained. However, he stated that no search was conducted "[b]ecause that was the whole purpose of getting the search warrant." (Tr. I at 24).

Officer Bolyard stayed at the defendant's residence and went to the rear of the home where two other officers were on "rear containment." (Transcript of February 11, 2011, hearing [Tr. I] at 29). The "rear containment" was done to prevent anyone from leaving the rear of the residence to go up the stairs to the separate upstair residence and to prevent someone from the upstairs residence from entering the lower unit. The door to the building was open when he arrived at the rear of the residence. Officer Bolyard took over the rear containment responsibility at approximately 12 midnight.

Officer Bolyard personally did not receive consent to be inside the common hallway and was not aware if anyone else received consent from the upstairs residents. Two other officers were on rear containment – one was inside the doorway by the back stairway to the basement and the other was outside at the southwest corner of the building. The officers inside the back stairwell were just standing there to make sure that nobody left 1015 N. 18th Street or went between the two units in the duplex. While Officer Bolyard was in the rear stairwell, he heard what he thought was a shotgun being racked. He notified the sergeant on the scene and the detectives who were drafting the search warrant.

Officer Bolyard remained on rear containment the entire time between 12 midnight and approximately 3:30 p.m. when the detectives arrived on the scene with the search warrant. He did not recall saying anything to anyone in the residence. The officers were basically silent and getting orders from their sergeants until the search warrant arrived.

Detective Obregon obtained the search warrant at about 3:22 a.m. and then returned to the defendant's residence with the warrant. After the detectives arrived with the search warrant, the officers began to search the residence. Detective Obregon participated in the

- 3 -

search. Detective Obregon was not advised at any time during the events on November 14-15, 2010, that the residence had been searched before the search warrant was obtained.

**ANALYSIS**

The defendant contends that there is no evidence showing that a search of the residence did not occur prior to the detectives obtaining of the search warrant. However, the defendant also states: "It is not entirely clear that a search occurred before the issuance of the search warrant." (Defendant's Brief in Support of Motion to Suppress Evidence Due to Illegal Search [Defendant's Brief] at 3). The defendant also maintains that a seizure took place because the officers "contained" the residence and were inside the back hallway without consent from the occupants of the duplex or a warrant.

In opposing the motion, the government asserts that the defendant had no reasonable expectation of privacy in the rear stairwell which was part of a common hallway. The government points out that Officer Bolyard, who was stationed in the hallway for about three hours, did not enter the defendant's unit and was not assigned to collect any evidence. The government further asserts that neither Detective Obregon nor Officer Bell were ever advised that the defendant's residence had been searched before the search warrant was obtained.

"The Fourth Amendment protects against warrantless intrusions by the government into areas in which that individual holds a reasonable expectation of privacy." United States v. Villegas, 495 F.3d 761, 767 (7th Cir. 2007). Whether an expectation of privacy exists for purposes of the Fourth Amendment depends on two questions: 1) whether the individual, by his conduct, has exhibited an actual expectation of privacy; and 2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable. United States v. Yang, 478 F.3d 832, 835 (7th Cir. 2007) (citing Katz v. United States, 389 U.S. 347, 461 [1967]). "A defendant objecting to a search bears the burden of proving a legitimate

expectation of privacy in the area searched." United States v. Pitts, 322 F.3d 449, 456 (7th Cir. 2003). The inquiry into whether a defendant's expectation of privacy was reasonable is based on the facts and whether a legitimate expectation of privacy exists in a particular place must be determined on a case-by-case basis. Villegas, 495 F.3d at 767 (citations omitted).

In Villegas, the defendant sought suppression of the evidence based on the grounds that an officer entered the common hallway of the duplex without a search warrant. The court rejected the defendant's contention, concluding that the defendant had not demonstrated a subjective expectation of privacy in the common hallway in his residence, nor had he shown that any expectation of privacy he might hold with respect to that hallway is one that society is prepared to recognize as reasonable. Under the circumstances, the court held that the officer's warrantless entry into the duplex's common hallway did not violate the defendant's Fourth Amendment rights. 495 F.3d at 766; see also, United States v. Concepcion, 942 F.2d 1170, 1172 (7th Cir. 1991) (holding that the tenants have no reasonable expectation of privacy in the common areas of an apartment building).

In this case, the testimony indicated that the rear common hallway was used by both units in the duplex. The defendant presented no evidence to demonstrate that he had a subjective expectation of privacy with respect to this common hallway. He also has not shown that the expectation "is one that society is prepared to recognize as reasonable." Yang, 478 F.3d at 835. Therefore, the court finds that the defendant did not have a reasonable expectation of privacy in the rear common hallway. Moreover, even if he did, such expectation would not be "one that society is prepared to recognize as reasonable." Yang, 478 F.3d at 835.

With regard to the alleged illegal search, the record is devoid of any evidence that officers searched the defendant's residence before the search warrant was obtained.

Although both Officer Bell and Detective Obregon stated that they had no personal knowledge that a search had not taken place prior to the issuance of the warrant, no officers on the scene told them that a search had occurred. As Officer Bell concluded, no warrantless search took place "[b]ecause that was the whole purpose of getting the search warrant." (Tr. I at 24). Thus, the court concludes that the officers did not search the defendant's residence prior to the issuance of the search warrant at 3:22 a.m. on November 15, 2010. Accordingly, the court will recommend to the district court that the defendant's motion to suppress evidence based on an illegal search be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS RECOMMENDED** that United States Chief District Judge Charles N. Clevert enter an order **denying** the defendant's motion to suppress his statement and to suppress evidence due to an alleged illegal search. The basis for the court's recommendation to deny the portion of the defendant's motion to suppress regarding his statement is set forth in the transcript of the evidentiary hearing on February 19, 2011. (Docket # 8).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2) (as amended effective December 1, 2009), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin, this 4th day of March, 2011.

                          BY THE COURT:

                          s/Patricia J. Gorence
                          PATRICIA J. GORENCE
                          United States Magistrate Judge